Judge Owsley
delivered his own opinion.
I concur in reversing the judgment which was rendered by the circuit court in this case. But as the opinion just delivered has not, in *657 every point, my assent, and as the cause must go back to the circuit court for further proceedings, it is due to the case that I should give my views on the points of difference. This I shall proceed to do.
Question, on ?vh,ich *jle agree! lS*
^icfonce?3 motionTfor instiuctions as in case thaTaffirma-' tive pleas are not main-taine“"
The action was brought by Clay, the appellant, against the appellees, on a note for $2,240, dated October 28th, 1818, and payable two years thereafter. The trial was had in the circuit court on an issue made up to a plea denying that the note was given upon any good or valuable consideration. Át the trial, instructions to the jury were given by the court, and others were refused. Exceptions were taken in each case to the opinion of the court, and the evidence made part of the record.
With respect to the instructions which were given, I concur in the view taken of them by Judge Mills, and shall, therefore, leave that branch of the case without adding any remarks to those made by him. But my understanding of the law involved in the refusal of the court to give other instructions, is somewhat different from that of his, and it is to that branch of the case I design to direct the remarks that I shall make.
After the evidence on the part of the appellees was heard by the jury, the court was moved by the appellant, but the motion was overruled, to instruct the jury that the whole evidence given on behalf of the appellees, was incompetent and insufficient to prove or support their plea. Judge Mills thinks this instruction should have been given to the jury, and that the court consequently erred in overruling the appellants motion. I think differently.
In presenting my views on this point of differ-enc-e, I shall not enter upon a particular examination of all the evidence introduced by the appellees and upon which the motion of the appellant was predicated. The issue made up by the parties is pf a mixed nature, involving both matter of law and fact, and my object will be to show that assuming the facts to be true, which the evidence in some degree conduces to proye, that in point of law tljere *658 is no sufficient consideration to uphold the note, upon which the action is founded. Í assume the facts, because it is the peculiar office of the jury, and not the court, to weigh the evidence and decide the facts involved in an issue. Whether or not particular facts when proved, satisfy the allegations in the pleadings, is no doubt a question of law proper to be decided by the court, but the facts should always be first ascertained by the jury, or expressly or impliedly admitted by the parties, before the question of law is acted on by the court. Thus it is, for example, the jury may find the facts specially in their verdict, or after the party on whom the burthen of proving the issue is cast, has introduced his evidence, the adverse party, by admitting the facts which the evidence conduces to prove, may demur to the evidence, and after the facts are found by the jury, in their special verdict, or after the facts are admitted by the demurrer to evidence, the sufficieney of those facts in point of law to satisfy the allegations, will be a question of law for the consideration and judgment of the court. In neither case, however, does the court undertake to decide the facts involved in the issue, nor could it do so without invading the province of the jury. In the one case the facts found by the jury, in their special verdict, are taken as true, and in the other case every fact which the evidence conduces to prove, is assumed to be admitted, and in neither case does the .court do more than decide upon the sufficiency of the facts found by the jury or admitted by the parties to support the allegations of the pleadings. The same may be said of motions to instruct the jury. The party making the motion does not always expressly admit ■every fact which the evidence conduces to prove, but the motion partakes of the nature of a demur-•j-erto evidence, and if the facts be not expressly admitted, the court would invade the province of the jury, were it to act otherwise than to assume as proved, every fact which there is any evidence conducing to prove.
"Statement of the original •transaction.
I shall, therefore, without attempting a particular discussion of the evidence, barely advert to some of the prominent facts which, according to my un~ *659 Iíersianding, the evidence conduces, in some degree, to prove, and which, if sufficiently proved, conVince me that in point of law, there is no valid consideration for the note, and that the issue is maintained on the part of the appellees.
First note Sivei) f°rthe stock™06
Prentiss’ circumstances s departure from the country,
Novation " a.nd exeou“ note'sued up, m. '
In December, 1817, Green Clay, the appellant, was the owner of stock toa considerable amount in the bank of the Kentucky Insurance Company, and contracted for the sale thereof, with James Prentiss, at the price of six thousand five hundred dollars, for which Prentiss was to execute his note to Clay, endorsed by some of the appellees as sureties. Pren-tiss accordingly executed and delivered to the appellant the following endorsed note:
Lexington, December 30, 1817.
“Six months after date. I promise to pay John T. Mason, Jr. or order, six thousand five hundred dollars, negotiable and payable at the Bank of Kentucky, without defalcation, for value received.
(Signed,) James Prentiss.”
(Endorsed.) “For value received I assign the within note to Sebree and Johnsons.
(Signed,) John T. Mason, Jr.”
“We assign the within to Green Clay.
(Signed,) Sebree and Johnsons.”
At the date of this note, Prentiss resided with his family in Lexington, and was greatly embarrassed in his circumstances, and some two or three months before the note became payable, he conveyed, in trust for his creditors, the most of the estate which he had in possession, and precipitately left the State, leaving behind him his family. The .circumstances with which he left the country, induced some to think that he would never return,. but others thought that he would again come back to his family. His family also broke up house-keeping, and. took boarding in Lexington.
On the 25th of September, 1818, Clay caused an action to be commenced on the note in the Fayette court against Prentiss. The capeas which was dat-®d on that day, was made returnable to the Novena- *660 lifer term thereafter, and was returned by the sheriff of Fayette, “no inhabitant.”
Held the evidence conduced to prove the supposed liabilN ty as endorsers on the first note, was the only consideration for that sued on.
ifeithcr for-behrance to sue on an unjust demand, nor giving timo for payment of it, is a valid consideration.
But before the return day of this writ, the endorsers, supposing that they were liable under their endorsement, agreed with him through his counsel, to divide the debt .into three instalments, payable in one two and threé years, and to give their separate note for each, with additional security. Thé note which was given for one of the instalments is that upon which the present action is founded.
From the preceding facts, if nothing conducing to a different conclusion was proved, the jury was undoubtedly at liberty to infer that the supposed liability of the endorsers of Prentiss’ note, and thé giving day by Clay for their making payment, was the only consideration for the note now in contest, as well as the other notes which were executed by the appellees, for the other two instalments. As such might have have been the inference of the jury from the facts, therefore, I shall assume for the present, that the note was given on no other consideration, and attempt to show that a consideration of that sort is not in point of law a valid one, provided the endorsers were neither legally ór morally bound for the debt of Prentiss at the time their notes were executed to Clay.
Were we to exclude from this question of consideration, that artificial and technical influence which writings are calculated at times to have upon the mind, and treat the question simply as in-voling the sufficiency of the consideration upon common law principles, to uphold a parol promise, there would be no difference of opinion. Neither the forbearance to sue for, or the giving day to make payment of a demand not originally binding, can be of any benefit to the party promising, in consideration of the forbearance or the giving day for payment, or any prejudice to the party giving day or forbearing; and it is an inflexible rule of the common law, that to make a contract or agreement obligatory, the consideration must be either a benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made.
Pomises by executor or heir to pay the debt of the docedant where they have no assets will not support an action.
Femes covert — duress &c.
Promise of assignor to pay assignee when not ha-ble, is bu* nudum pac-tum.
At cómmon law, the consideration of unsealed writings required as in case of parol promises.
The statute made the unsealed writings evidence of the consideration as in case of deeds.—
But, a prior statute had allowed the consideration 6f all obligations by deed to be assailed by plea, and its insufficiency proved by defendant in bar of the action.
*661 ’íhüs it is held if a promise be riiádé by an éxé-fcutor, or an heir at law, who has no assets in consideration of forbearance, to pay the debt pf the testator, that the promise is a nuchím pactüm-, ánd cannot be enforced. So, if an heir promise in consideration of the forbearance of a suit in chancery, to which he was not liable*
So if the promise be in consideration of forbearance of a suit upon a contract made by a married woman, or in consideration of relinquishing an assumpsit which was void, or in consideration of a discharge froin a tortious arrest. See 1 Cum-, mins on contracts, 13 and 16, and the authorities there cited*
From these cases it would, therefore, seem necessarily to follow, that if the endorsers of Prentiss’ note were not liable for that debt, the note in question, whether executed in consideration of day7 being given for the payment, or the forbearance to sue, or in consideration of relinquishing the claim against them, it has no sufficient consideration for its support, unless the circumstance of its being reduced to writing, gives it an operation in respect to the consideration which a parol promise has not at common law.
The writing is riot hbwever admitted to affect the question, as to the sufficiency of the consideration. The note is not sealed, and though written, is a common law instrument, of no higher dignity than a parol promise, requiring the same consideration for its support.
By an act of the legislature of this country, unsealed writings are now placed on the same footing with sealed ones, and it is known that at common law, the solemnity of the act was in itself a sufficient consideration to uphold a deed, and no other consideration was necessary to be proved. But before the passage of that act, by another act of the legislature of this country, the consideration of sealed writings was permitted to be gone into and impeached by special plea, in the same manner that Writings not sealed, might be at common law, so *662 that now, according tro the repeated judicial coll-» structi on of those acts, no action can be maintained either upon a sealed or unsealed writing, containing stipulations for the payment of money, provided the defendant, by proper plea alleges, and by competent evidence proves, that there was ño sufficient consideration for the writing.
Plea, that the obligation sued on was not given for any good or valuable consideration, without detailing the facts} is good.
Bond giveii by an endorser of a bill of exchange, when not liable, may be avoided by a plea impeaching the consideration.
field, contra to Judge Mills, the endorsers on Prentiss’ original note were discharged by Clay’s lack
As long ago as spring term, 1814, it was decided by this court, in the case of Ralston and Sébastain against the Bullitts, that under the act allowing the consideration of sealed writings to be gone into and impeached, it is sufficient for the defendant in his plea to deny that the bond upon which the action is founded, was given for a good or valuable consideration, without detailing the facts, 3 Bibb, 261. Since then the practice of the country, has in a great degree been brought to conform to that opinion, and many subsequent cases have been decided upon issues made up to such a plea, and upon the same idea, that a merely voluntary bond, or one having no good or valuable consideration, will not authorize a recovery upon it. In that case another principle was also decided, directly in point, on the question of consideration, and in perfect accordance with the cases to which reference has been made. The principle is this, that a bond given by an endorser of a bill for the amount, after be is discharged of his liability, may be avoided by plea impeaching the consideration.
My remarks thus far have been predicated upon the supposition, that at the time the note in contest was executed, the endorsers of Prentiss’ note were discharged from liability, and it is Upon that hypothesis only, that the cases to which I have referred are understood to have any application. But is it true, that those endorsers were discharged? Or were they, notwithstanding the time the note of Prentiss which was endorsed by them, was permitted by Clay to sleep after it became payable, before-suit was commenced by him, still under either a moral or legal obligation to Clay for the demand? These are questions involving principles not under-, stood to he hitherto finally settled, and which aret *663 .admitted not to be entirely free from difficulty. But after exploring the cases which have been decided, and which seem to have any application to the principles involved, I have been unable to bring my mind to any other conclusion upon the facts which the evidence conduces to prove, and which I consider myself bound in the consideration of the question to assume as proved, than that in point of law, the endorsers of Prentiss’ note were not, at •the time of giving their note to Clay, either legally or morally bound for the debt of Prentiss.
Held in concurrence with Judge Mills, that the original note for the price of the Insurance stock, was on sufficient consideration.
Where the principal party gives security, in the form of endorsers or assignors of his note, to the person to be secured in the payment, the assignors are bound on condition of due diligence, as assignors are in real transactions, and not oth erwise.
I cast from this branch of the case all influence ■in respect to the attempt made by the appellees to impeach the consideration of the note which was given by Prentiss and endorsed by some of them. The instructions which were^given by the court to the jury, relate directly to that attempt, and I have said that the view taken of that branch of the case by Judge Mills, accords with my own. I go upon the supposition that the note of Prentiss, which was endorsed by part of the appellees, was found.ed on a valuable consideration, and that when delivered to Clay, it was binding on Prentiss, and that as endorsers those by whom it was endorsed, were also in their character of endorsers, liable as other endorsers of bonds for the payment of money, and. not further.
By the contract with Clay, security for the purchase of the stock was to be given by Prentiss, but the nature and extent of that security was a subject of arrangement with them, and as the security .agreed on was endorsers of his note to Clay, there is no pretext for saying that after the note was endorsed, those by whom the endorsements were made, took npon themselves other, or greater liability than any other endorser of like instruments .of writing.
I also go upon the idea, that after the note with its endorsements were given to Clay, and after it became payable, there was not, from the facts assumed, and which the evidence conduced to prove, that diligence used by Clay, in prosecuting suit against Prentiss, as to hold the endorsers Hable on *664 tbeir endorsements. It has long since been held, and it would be a useless waste of time in me to attempt to prove its correctness, that an endorsement implies an undertaking by the endorser, that he will be accountable, provided that by due and proper diligence the endorser is unable to make the debt assigned out of the obligor. It has siso been repeatedly decided, that as a general rule, the diligence to be used by the endorser, is that of a suit commenced in apt time and duly pursued by the vigilant use of all legal means, to final and ultimate process. To be in apt time, it has also been decided, that the suit should be brought to the first court after the assigned debt becomes payable, unless there should not be sufficient time between the time of payment and the next court, to admit of judgment at that time. Tested by these rules, the suit which was brought by Clay against Prentiss, was not commeneced in due and apt time. The writ did not issue to the first term of Fayette court, after the note became payable, though there was sufficient time after the time of payment and the first court, to have authorzed judgment at that time, if the writ had been sued put and served upon Prentiss.
Diligence required by as-signee in prosecuting suit against debtor to charge the assignor.
If at the time the note is assigned the tjebtor resides in the state, but removes b,efpre it falls due, the assignor may be charged without suit against debt- ■or.
But here I a;n met with an objection. It is said that Prentiss had before the note became payable left the State, and had not returned until after the first court after the note became payable, and hence it is contended, that although the rule with respect to diligence be as is stated in the general, yet like most other general rules, it has exceptions, and the absence of the obligor from the State is one. I admit that the rule to which I have adverted, is not without exceptions, but I deny that the temporary absence of the debtor from the State, forms an exception.
If at the time a note is endorsed, the debtor resides in the State, and before it becomes payable, he removes from the State, T admit that there may be recourse against the endorser, without suit against the debtor. In such a case there would be no court in this country, possessing cognizance of the matter,- *665 and it would be absurd and idle to require the as-signee to sue out a writ in a court possessing no jurisdiction of the case, before he would pursue the endorser. If a writ was required to be sued out in one court not possessing jurisdiction, with the same propriety, might it be required in every other ? So that by once admitting the necessity of a suit in such a case, there would be no limit short of a suit in every court in the State.
But, a temporary absence 01' the debtor will not excuse the institution of a suit to the first term, as in other oases.
But not so, if there be no change of residence, no actual removal from the State, though there may be a departure from the State. Notwithstanding tiie debtor may be absent from his residence, he may be sued in the court of the county of his residence, the cause may progress, and such proceedings therein regularly had, as for judgment to be obtained against him, even should he not return. In such a case, therefore, there is no necessity for dispensing with the general rule on the subject of diligence, and permit recourse to be had against the endorser, without the prosecution of suit in due and apt time against the debtor. Were the temporary absence .of the debtor from the State at the time of the debt becoming payable, admitted .to be an exception to the general rule, what is there to prevent the case ,of absence from the county of the debtor’s residence, or his insolvency, from likewise being made .execeptions, the latter of which, has however, been decided not to be such, and the former has never been thought by any lawyer to be so. There must, I apprehend, not only be due diligence by suit, but to authorize a recovery of the assignor, the record of the suit must prove it to have been commenced before the first term after the debt assigned becomes payable, unless the court follows the time of payment so recently as to forbid the possibility of judgment at the first term if the writ was executed, or unless by the removal of the debtor from the State after the endorsement, there can be no suit in any court of the State possessing competent jurisdiction of the case, or from some uncon trola ble necessity, such as death of one of the parties, no suit could, have been brought within that time, ,
Wherever a suit may be prosecuted, dence oTdue di'igenoe by suit, and of debtor’s m-indispensable to charge the assignor.
Temporary thiTdebtor from the state does not ex-Sgnee from” the institution of suit. Removal af-tct the as«. signment and before payday, may.
If record evidence of due and proper diligence by suit be not necessary in every case where suit may be prosecuted, why was it held in the case of Smith against Blunt, 2 Marsh. 522, that a delay o£ a few months in suing out a capias ad satisfaciendum, after a judgment, discharged the endorser, though the-suit had been commenced in due and proper time, and though a fieri facias had also issued in apt time on the judgment, and that returned no property found by the sheriff, and although the defendant against whom the judgment was recovered, was proved to have been discharged under the act concerning insolvent debtors, from the execution of other creditors. In that case as jn others of libe nature, that have been decided in the same way, it might have been argued that to sue out a ca. sa. when there was no probability, from the insolvency of the debtor, of making the money, would be to accumulate cost without the prospect of benefit, and therefore unnecessary and ought not to be required, but the rule of law exacting due diligence by suit and the vigilant use of all process within the power of the party was too inflexible to yield to such arguments, and by the neglect in not suing out the ca. .so. a few months, the assignee lost his recourse against the endorser, So I apprehend, must be the fate of every assignor who neglects to sue the debtor against the first term, unless he brings his case in some of the exceptions already mentioned. I have been unable to find any case heretofore decided, which, according to my understanding of it, militates in the slightest degree against this conclusion.
There are cases in which this court, in speaking of the general rule with respect to diligence by.suit, have, without its being necessary to the decision of the point before the court, admitted the rule to have exceptions, and in general terms have pointed out absence from the State by the debtor, as forming an exception. Such are the cases of Smallwood against Woods, 1 Bibb 542, and Spratt against M’Kinney, 1 Bibb 596. But it will be evident to anv one who may take the trouble of looking into those cases, that it was not intended by the court to decide that absence from the State alone, without an actual re- *667 inoval, would take the ease out of the general rule, and allow a recovery against the assignor, without suit against the debtor. The case of, Oldham and Bergan is in accordance with the distinction I have taken. In that case the assigned note did not become payable sufficient time before a term of the court, to have admitted of a judgment at the first term, if the writ had been sued out and executed on the debtor immediately after the debt was payable, and hence it was correctly decided in that case, that the failure to sue before the first court, was no discharge of the assignor. The case of Brinker against Perry, 5 Litt. 194, though not expressly in point, bears a stronger analogy to the present. In that case the note was assigned after it became payable, and without alleging diligence against the maker of the note by suit, the plaintiff, as an excuse for not doing so, charged in his declaration, that the maker of the note had, when it became payable, left the State, and continued out of the State for many months, and was still out. In remarking on that case the court say: “It is unimportant whether the declaration be understood to allege the fact of Moody, the maker of the note, having removed from the State, or only absented himself on a temporary occasion. In either case the principle is the same, and in neither case can there be a recovery against the assignor without due diligence by suit against the maker of the note. Tf the absence was merely temporary there was nothing to prevent Brinker from suing the maker of the note, and if there was a permanent removal, as it is alleged to have taken place before the note was assigned, he must be understood to have undertaken to pursue the maker of the note by suit, in the country to which he had removed.” Now instead of being an authority against the distinction which I have taken to the case last cited, as far as it has any bearing, sustains what I take to be the correct rule of law. It assumes that where there is a temporary departure from the State by the maker of the noté, there is nothing to prevent his being sued in the courts of this country, and that, notwithstanding such a departure, due diligence by suit must be used *668 against him to authorize recourse against the eu* dorser. Hence I conclude that if in point of fact ^ ¿eparture of Prentiss from the State was intended to be temporary, and not designed as a removal or change of his residence, that in failing to sue be; fore the first court of the Fayette circuit, Clay'lost his recourse against the endorsers.
Removal before assignment will not.
The evidence C°o're the ab-fence of Pren-tuswastom porary, and vap
iury decides of evidenof and between conflicting evidence.
But I may be told that from the circumstances of p'is flight, combined with other facts, Prentiss’ intention to remove from the State might be inferred, and if there was in fact a removal, the liability of the endorsers remained until after the suit was brought by Clay, and until after the note upon which this action was brought was executed. 1 answer that from the continuance of Prentiss’ family in Lexington, and other circumstances, the jury were at liberty to infer that the flight of Prentiss was not intended as a change of his residence, and it is not for the court to decide upon the weight of conflicting evidence. It was proper, therefore, to overrule the appellant’s motion, and leave the facts with the jury for tlicir determination; if, as I think the evidence conduced, in some degree, to prove facts which, if they exist in truth, the issue on the part of the appellees was supported, though evidence may also have been introduced conducing to prove other facts, which if found by the jury, would defeat the defence of the appellees.
Before I leave the case, one or two further remarks are due, to prevent any misconstruction on the Poil,t of consideration. In assuming the facts asto that point, I would not be understood as expressing an opinion on the weight and credit due to afl the evidence: to do so would, according to my Understanding, encroach on the office of the jury. Evidence conducing to prove a different consideration for the note in contest than that which I have assumed may also have been introduced and which, if found by the jury 10 be the true consideration, might uphold the note and authorize a recovery by the appellant. But between evidence conducing to prove contrary facts, it is not for the court but the jury to decide. If there.had been no evidence con *669 ducing to prove any fact which, if true, will support the issue on the part of the appellees, I admit, as matter of law, the court should have given the instructions to the jury, but I have attempted to show that the evidence does, in some degree, conduce to prove títere was no valid consideration for the note, and although other evidence conducing to prove a valid consideration may have been introduced, I conceive it not to be within my province, between conflicting evidence, to decide upon its weight, and draw the inference of fact, which, by the triers of facts might be drawn from the whole evidence.
Chief Justice Bibb did not sit in this cause.
Mayes and Triplett, for appellant; Crittenden, Tal-bott and Depew, for appellees.